IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, TEXAS STATE CONFERENCE OF NAACP BRANCHES AND AUSTIN BRANCH OF THE NAACP; <br><br>HOME BUILDERS ASSOCIATION OF GREATER AUSTIN, INC.; and <br><br>NATIONAL ASSOCIATION OF HOME BUILDERS, INC. <br><br>　　　　**Plaintiffs** <br><br>v. <br><br>CITY OF KYLE, TEXAS, <br><br>　　　　**Defendant** | § § § § § § § § § § § § § § § § § § § § § | A-05-CA-979 LY |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:　THE HONORABLE LEE YEAKEL
　　　UNITED STATES DISTRICT JUDGE

　　　Before the Court are: Defendant's Motion to Dismiss for Lack of Standing filed on January 13, 2006 (Clerk's Docket No. 6); Plaintiffs' Response filed on February 15, 2006 (Clerk's Docket No. 14); Defendant's Reply filed on February 21, 2006 (Clerk's Docket No. 15); Defendant's Post-Hearing Supplemental Brief filed on May 19, 2006 (Clerk's Docket No. 19); and Plaintiffs' Post-Hearing Supplemental Brief filed on May 25, 2006 (Clerk's Docket No. 21). The Court heard oral argument from counsel on May 16, 2006.

　　　The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  GENERAL BACKGROUND

On November 24, 2003, the City of Kyle, Texas ("Defendant" or "City") adopted changes to its zoning and subdivision ordinances ("Amended Ordinances") applicable to new single family homes built in the City's jurisdiction.[1]  In relevant part, the amendments: (1) require a minimum garage size of 480 square feet, (2) increase the minimum home size from 1000 square feet to 1200 square feet, (3) require a masonry exterior, and (4) increase the minium lot size by twenty percent for single family residences.  Plaintiffs allege that these changes have caused the price of new entry level single family homes in the City's jurisdiction to increase from an average price of $100,000 to an average price of $138,000.  Plaintiffs claim that this cost increase for starter homes have or will have a disparate impact on African-Americans and Hispanics who seek to purchase a single-family home within the City's regulatory jurisdiction and have a segregative effect on the community.  Thus, on November 22, 2005, Plaintiffs the National Association of the Advancement of Colored People, the Texas State Conference of NAACP Branches and the Austin Branch of the NAACP ("NAACP"), the Home Builders Association of Greater Austin ("HBA"), and the National Association of Home Builders ("NAHB") (collectively "Plaintiffs") filed the instant lawsuit under the Fair Housing Act of 1968, 42 U.S.C. § 3601, *et seq.*

Defendant now moves the Court to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Plaintiffs lack standing to bring this lawsuit under the Fair Housing Act.  Specifically, Defendant argues that Plaintiffs have failed to sufficiently allege the necessary requirements for standing under Article III of the Constitution.  Defendant argues that the home building trade association plaintiffs have failed to allege an injury-in-fact and have only pled

---

[1] Zoning Ordinance No. 438 and Subdivision Ordinance. No. 439.

"speculative and hypothetical economic injuries absent of any concrete and particularized racial considerations." Defendant further avers that the NAACP, a New York Corporation, has failed to demonstrate how it has a legally protected, particularized interest that is being violated by the City's zoning ordinances. Even if the NAACP had shown a nexus between the alleged harm and its particularized interest in zoning in the City of Kyle, Defendant argues that its discrimination claim in its representative capacity is based on inaccurate income statistics. Finally, Defendant argues that Plaintiffs have failed to show a causal connection between the Defendant's conduct and the alleged injury and have failed to show a substantial likelihood that the injury will be remedied by the requested relief.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When ruling on a Rule 12(b)(6) motion to dismiss, the court must accept as true the well-leaded factual allegations in the complaint. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff. *Id.* A dismissal under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Thus, the central question before the Court is whether the plaintiff's complaint states any valid claim for relief.

## III.  ANALYSIS

Plaintiffs' Complaint alleges that the City's revised zoning ordinances violate the Fair Housing Act of 1968 ("FHA") because the Ordinances "have or will have a disparate impact on minorities that

seek to purchase a single-family home within the City's regulatory jurisdiction, and have a segregative effect on the community." Complaint at 1.  Defendant argues that the Plaintiffs have failed to allege sufficient facts to establish standing and that the Court should thus dismiss this case pursuant to Federal Rule 12(b)(6).

Article III of the Constitution restricts federal court jurisdiction to "cases and controversies." U.S. CONST. art. III § 2.  The Supreme Court has ruled that unless a plaintiff can demonstrate the requisite "case or controversy" between himself, personally, and the defendant's actions, the plaintiff can not seek relief. *Warth v. Seldin*, 422 U.S. 490, 502 (1975).  In order for a plaintiff to bring a case in federal court, the complainant must establish standing, which satisfies the "cases and controversy" requirement, by alleging and showing "that [s]he has sustained or is in immediate danger of sustaining a direct injury as a result of that action"of which she is complaining. *Ex Parte Levitt*, 302 U.S. 633, 634 (1937).  The injury must be "sufficiently real and immediate,"as opposed to merely "conjectural" or "hypothetical." *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494, 496 (1974)).  In essence, the standing question turns on whether a plaintiff "has alleged such a personal stake in the outcome of the controversy as to warrant invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth,* 422 U.S. at 498.

**A.     Standing under the Fair Housing Act**

The FHA makes it unlawful "to refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling[2] to any person because of race, color, religion, sex, familial status, or national

---

[2]"Dwelling" means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, *and any vacant land which is offered for sale or lease* for the construction or location thereon of any such building,

origin." 42 U.S.C. § 3604(a).³ The Act provides for a private cause of action to an "aggrieved person." 42 U.S.C. § 3613. A violation of the FHA may be established not only by proof of discriminatory intent, but also by a showing of significant discriminatory effect, as alleged in the instant case. *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir.), *cert. denied*, 519 U.S. 1041 (1996); *Hanson v. Veterans Administration*, 800 F.2d 1381, 1386 (5th Cir. 1986).

The Supreme Court has held that standing under the FHA extends to the full limits of Article III of the Constitution, and is not restricted by any of the doctrines of prudential standing. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). See also, *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 96-97 (1979) (noting that standing under the FHA extends to the "broadest class of plaintiffs permitted by Art. III"). Thus, the "sole requirement for standing under the FHA is the Article III minima,"⁴ which requires a plaintiff to establish the following three elements:

> (1) the existence of an injury in fact, *i.e.*, an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.
>
> (2) a causal connection between the injury and the conduct complained of, and the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the an independent action of some third party not before the court; and
>
> (3) a substantial likelihood that the injury will be remedied by the requested relief.

*United States v. Hays*, 515 U.S. 737, 742-43 (1995); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

---

structure, or portion thereof. 42 U.S.C. § 3602(b) (emphasis added).

³The FHA also forbids such discrimination on the basis of handicap. 42 U.S.C. § 3604(f).

⁴*Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003) (citing *Havens*, 455 U.S. at 372).

The party invoking federal jurisdiction bears the burden of establishing the above-elements. *Lujan*, 504 U.S. at 561. "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* Thus, at the pleading stage – as in this case – "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 889 (1990)). As the Supreme Court has stated: "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501. However, the Court notes that the Plaintiffs will "have to demonstrate at trial that it has indeed suffered impairment in its role of facilitating open housing before it will be entitled to judicial relief." *Havens*, 455 U.S at 379, n. 21. Keeping these standards in mind, the Court will now address whether each Plaintiff has standing to pursue this lawsuit.

**B.   NAACP**

NAACP has brought this lawsuit on behalf of itself as an organization and on behalf of its members and the African American community in a representational capacity.

1.   <u>Associational Standing</u>

An association has standing to sue on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires

6

participation of the individual members in the lawsuit. *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552-53 (1996) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

### a. Would the NAACP's members have standing?

To meet the first prong of this test, the NAACP must establish that its members satisfy the three elements for standing under Article III, *i.e.*, that they have demonstrated (1) an injury in fact *i.e.*, an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely as opposed to merely speculative that the injury will be redressed by a favorable decision. Regarding the first prong, the NAACP alleges that the Revised Ordinances "have or will have a disparate impact on minorities that seek to purchase a single-family home within the City's regulatory jurisdiction, and have a segregative effect on the community." Complaint at 1. In support of this claim, the NAACP relies on statistics showing that the increase in the cost of new homes in the City of Kyle has had a disproportional effect on the ability of African Americans and Hispanics to purchase such homes in the City due to their generally lower incomes than non-minorities. The Court finds that the NAACP's members have alleged a "distinct and palpable injury." *See Havens,* 355 U.S. at 376 (racial segregation is a palpable injury sufficient for standing). See also, *Simms*, 83 F.3d at 1555 (a violation of the FHA may be established not only by proof of discriminatory intent, but also by a showing of significant discriminatory effect).

Defendant argues that the NAACP has failed to demonstrate an injury in fact because they have relied on inaccurate statistics to support its claim. Namely, the City contends the Plaintiffs have improperly relied on statistics from the entire Austin-San Marcos corridor, instead of relying on

statistics from the City of Kyle.  The Court finds that the Defendant's argument is premature given that this case is only at the pleading stage.  *See Gladstone*, 441 U.S. at 115 & n.31 (noting that facts alleged were sufficient to survive motion to dismiss, but noting that petitioners would have opportunity to contest the facts at trial); *Fair Housing in Huntington Committee, Inc. v. Town of Huntington*, 316 F.3d 357, 361 (2nd Cir. 2003) (finding that defendant's arguments regarding the factual underpinnings of the plaintiff's standing were premature at the pleading stage of the case).  The parties will have sufficient time during the discovery period of this case and at later stages in the case to fully develop and fully contest evidence relevant to the merits of this case.

Next, the NAACP must demonstrate a causal connection between the alleged injury and the conduct complained of.  To meet this prong the NAACP members have to demonstrate that the alleged injury is "fairly  traceable" to the challenged zoning ordinances.  *Lujan*, 504 U.S. at 560.  Plaintiffs have alleged that the Defendant's adoption and enforcement of the subject ordinances has or will have a discriminatory effect on African-Americans and Hispanics "by virtue of its significant disparate impact on their ability to obtain housing in Kyle compared with whites."  Complaint at ¶ 51.  Again, Plaintiffs rely on statistics to support these claims alleging that the more stringent zoning and subdivision ordinances have caused the price of entry level homes to increase and that this price increase has had a disproportionate negative effect on the ability of minorities to purchase starter homes in the City's jurisdiction.  The Court finds that these allegations are sufficient at this stage of the pleadings to demonstrate causation.

Lastly, the NAACP members must demonstrate that it is likely as opposed to merely speculative that the injury will be redressed by a favorable decision in this lawsuit.  Plaintiffs have alleged that minorities were able to purchase homes for under $100,000 under the old zoning

ordinances. Thus, Plaintiffs allege that it is likely that if the Revised Ordinances were eliminated then the price of new houses would decrease thereby allowing more lower-income individuals to purchase new homes in the area. The Court finds that Plaintiffs have sufficiently alleged facts to meet the redressability requirement.

Based upon the foregoing, the Court finds that the NAACP has alleged sufficient facts to demonstrate that its members would have standing to bring the instant lawsuit.

        b.      <u>Are the interests germane to the NAACP's purpose?</u>

Next, the NAACP must demonstrate that the interests its seeks to protect in this lawsuit are germane to the organizations' purpose. Clearly, securing fair affordable housing for minorities is germane to the NAACP's purpose of eliminating discrimination in all aspects of society. Complaint at ¶ 9.

        c.      <u>Does the lawsuit require the participation of individual members?</u>

The Court first notes that there has been no allegation that the nature of the claims in this lawsuit require the participation of the individual members of the NAACP. The Court further notes that the NAACP is only seeking injunctive and declaratory relief in this lawsuit and, therefore, the Court finds that the participation of the NAACP's individual members is not necessary. *See Brown Group*, 517 U.S. at 554 (noting that precedent has precluded associational standing in cases when an organization seeks damages on behalf of its members). Accordingly, the Court finds that the NAACP has met the requirements for associational standing to seek injunctive and declaratory relief on behalf of its members.

9

## 2. Organizational Standing

An organization, such as the NAACP, has standing to bring suit on behalf if itself as an organization if it establishes the well-known Article III minima discussed above. *Lujan,* 504 U.S. at 560-61. Although the Complaint in this case asserts that the NAACP is pursuing this lawsuit on behalf of its members *and* on behalf of itself as an organization,[5] both parties have only addressed the associational standing issue in their briefing. *See* Plaintiff's Response at n. 3 (noting that it was reserving "the right to allege further facts to establish organizational standing in any amended complaint."). Therefore, the Court is unable to determine at this time whether the NAACP has organizational standing to proceed with this lawsuit. Because the Complaint lacks sufficient facts to establish the NAACP's organizational standing and this case is at the pleading stage, the Court finds that if the NAACP intends to proceed with this lawsuit on the basis of organizational standing, then it should be granted leave to file an Amended Complaint alleging sufficient facts to support the NAACP's organizational standing in this case. See *Havens,* 455 U.S. at 377-78 (where extreme generality of complaint made it impossible to say whether factual averments were sufficient to demonstrate standing, under the liberal federal pleading standards it was appropriate to allow plaintiffs to amend their allegations).

## C.   The Home Building Trade Association Plaintiffs

Plaintiffs HBA and NAHB, allege that "[b]y enacting the ordinances at issue which have the effect of disproportionately pricing minority home buyers out of the market, the city has 'otherwise made unavailable' 'vacant land' that members of the Builder Plaintiffs would use to develop and

---

[5] Plaintiffs' Complaint states that the NAACP has brought this lawsuit "on behalf of itself as an organization and on behalf of its members and the African American community in a representational capacity." Complaint at ¶ 9.

construct affordable housing." Plaintiff's Response at 6 (quoting 42 U.S.C. § 3604(a)). These Plaintiffs further argue that by enacting the Revised Ordinances, the City has "interfered" with the efforts of all the Plaintiffs in aiding and encouraging minorities from exercising their statutory right to fair housing.

Like NAACP, the HBA and NAHB have brought this FHA lawsuit on behalf of their respective organizations and on behalf of their respective organization's members. Accordingly, the Court must determine whether these Plaintiffs have associational and/or organizational standing to pursue this case.

### 1. **Organizational Standing**

An organization has standing to bring suit on behalf of itself as an organization if it establishes the well-known Article III minima discussed above, *i.e.,* (1) the existence of an injury in fact, *i.e.*, an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of and the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the an independent action of some third party not before the court; and (3) a substantial likelihood that the injury will be remedied by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

#### a. Injury in Fact

Defendant argues that Plaintiffs HBA and NAHB have failed to allege an injury in fact because they "have, at most, plead speculative and hypothetical economic injuries absent any concrete and particularized racial considerations." Defendant's Motion at 3. Defendant further argues that these Plaintiffs have failed to demonstrate a personal stake in the matter since they did not have in place

at the time the Ordinances were enacted a "detailed and specific project" to build low-income housing in the City of Kyle. Additionally, Defendant argues that HBA and NAHB have no "racial identity" of their own and that they are merely concerned with economic interests which are not protected under the FHA.

First, the Court notes that Defendant's argument that HBA and NAHB do not have standing because they have no "racial identity" which is protected under the Act is entirely meritless. The Supreme Court has specifically held that a plaintiff need not be a member of a protected class to bring suit under the FHA, as long as the plaintiff suffered an actual injury due to defendant's alleged discriminatory conduct. *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103 at n. 9 (1979).[6] As the Supreme Court has declared, "[a]s long as respondents have alleged distinct and palpable injuries that are "fairly traceable" to petitioners' actions, the Art. III requirement of injury in fact is satisfied." *Havens Realty Corp., v. Coleman,* 455 U.S. 363, 376 (1982). In *Havens*, the Supreme Court held that it was improper for the district court to have dismissed a non-profit organization for lack of standing where the organization had alleged that it had devoted significant resources to identify and counteract the defendant's racially discriminatory steering practices which, in turn, impaired the organization's ability to provide counseling and referral services for low and moderate income homeseekers. The Court found that the organization had clearly alleged an injury in fact: "[s]uch concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests." *Id.* at 379.

---

[6]Moreover, economic injuries can be palpable injuries protected under the Act. *Havens Realty Corp., v. Coleman,* 455 U.S. 363, 376-77 (1982).

The Court finds that Plaintiffs HBA and NAHB have alleged sufficient facts to establish an injury to their respective organizations by virtue of the alleged drain on their resources and frustration of their fair and affordable housing-related missions. HBA and NAHB have alleged that affordable housing, the avoidance of discrimination in housing and the goals of the FHA are all parts of their respective missions. HBA and NAHB have further alleged that they have expended a considerable amount of effort and diverted resources from other association initiatives to challenge the regulatory action of the Defendant, independent of the instant litigation. According to the Complaint, therefore, Plaintiffs have pled more than just that it redirected its resources in response to the instant lawsuit. *See Assoc. for Retarded Citizens of Dallas v. Dallas County MHMR Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994) (holding that merely redirecting some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization). As the Supreme Court held in *Haven*, the Court finds that Plaintiffs have alleged sufficient facts to demonstrate an injury in fact and to avoid dismissal under Rule 12(b)(6). *See also, Assoc. of Comm. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 360 (5th Cir. 1999) (noting that an organization could establish standing under the FHA if it had proven a drain on its resources resulting from counteracting the effects of the defendant's actions).

  b.  Causal Connection

The Court also finds that the HBA and NAHB have alleged sufficient facts showing that their alleged injury is "fairly traceable" to the Defendant's enactment of the Revised Ordinances. *Lujan*, 504 U.S. at 560. Plaintiffs HBA and NAHB have alleged that by enacting the Revised Ordinances, the City has "interfered" with the efforts of Plaintiffs in aiding and encouraging minorities from

13

exercising their statutory right to fair housing. The Court finds that these allegations are sufficient at this stage of the pleadings to demonstrate causation.

        c.      Redressability

Lastly, the Court finds that the HBA and NAHB have demonstrated that it is likely as opposed to merely speculative that the alleged injury will be redressed by a favorable decision in this lawsuit. Plaintiffs have alleged facts showing that the Revised Ordinances have caused an increase in housing prices which have had a disproportionate effect on minorities and that eliminating those ordinances would likely allow their organizations to aid in the ability of minorities to purchase affordable new housing in the area. Accordingly, the Court finds that Plaintiffs have sufficiently alleged facts to meet the redressability requirement.

Based upon the foregoing, the Court finds that HBA and NAHB have alleged sufficient facts to demonstrate organizational standing. However, the Court notes that HBA and NAHB will have to demonstrate at the summary judgment stage or at trial that "it has indeed suffered impairment" in its role in assisting minorities to purchase affordable housing in the City. See *Havens*, 455 U.S. at 379 n. 21.

    2.    **Associational Standing**

As already noted, an association has standing to sue on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires participation of the individual members in the lawsuit. *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552-53 (1996) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

The Court finds that Plaintiffs HBA and NAHB have alleged sufficient facts to demonstrate associational standing and to withstand dismissal at this time. HBA and NAHB have alleged that their members were harmed by the City's revised zoning ordinances in that those members that build and sell homes in and around the Kyle area are now precluded from assisting and supporting minorities from purchasing affordable housing in the area. Although the Plaintiffs have failed to identify a specific project in their Complaint, the Court finds that Plaintiffs have alleged sufficient facts to withstand the instant motion to dismiss. In addition, Plaintiffs have alleged that the elimination of housing discrimination is germane to the purposes of the HBA and NAHB, specifically the development and support of equal access to affordable housing for all. Finally, Plaintiffs HBA and NAHB are only seeking injunctive and declaratory relief and, therefore, there is no need for the individual members to participate. Accordingly, the Court finds that Plaintiffs HBA and NAHB have alleged sufficient facts to withstand the instant motion to dismiss for lack of associational standing.

**D.     Conclusion**

In summary, the Court concludes that the facts alleged in the Complaint are sufficient to withstand the instant Motion to Dismiss pursuant to Rule 12(b)(6). Defendant has failed to show that Plaintiffs can prove no set of facts in support of their claims which entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court does note, however, that it has made no findings on the merits of Plaintiffs' claims under the FHA or whether Plaintiffs will ultimately be able to demonstrate standing at the summary judgment or trial stage of this case.

## IV.  RECOMMENDATION

The Magistrate Court RECOMMENDS that the District Court DENY Defendant's Motion to Dismiss for lack of standing (Clerk's Docket No. 6). The Court FURTHER RECOMMENDS that the Plaintiff be granted leave, if sought, to file an Amended Complaint in this case.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S.Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996). The Clerk is directed to mail a copy of the instant recommendation to all parties by certified mail, return receipt requested.

SIGNED this 16th day of June, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE