United States Court of Appeals
Fifth Circuit

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

**FILED**
November 12, 2010

Lyle W. Cayce
Clerk

No. 09-50352

D.C. Docket No. 1:05-CV-979

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; TEXAS STATE CONFERENCE OF NAACP BRANCHES; AUSTIN BRANCH OF THE NAACP; HOME BUILDERS ASSOCIATION OF GREATER AUSTIN, INC.; NATIONAL ASSOCIATION OF HOME BUILDERS, INC.,

**FILED**

Plaintiffs - Appellants

DEC 27 2010

v.

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

CITY OF KYLE, TEXAS,

Defendant - Appellee

--------

Cons. w/ 09-50505

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; TEXAS STATE CONFERENCE OF THE NAACP BRANCHES; AUSTIN BRANCH OF THE NAACP; HOME BUILDERS ASSOCIATION OF GREATER AUSTIN, INC.; NATIONAL ASSOCIATION OF HOME BUILDERS,

Plaintiffs - Appellees

v.

CITY OF KYLE, TEXAS,

Defendant - Appellant

Appeals from the United States District Court for the

Western District of Texas, Austin

Before JONES, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that each party to bear its own costs on appeal.

ISSUED AS MANDATE: DEC 2 2 2010

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy   DEC 2 2 2010

New Orleans, Louisiana

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
November 11, 2010

No. 09-50352

Lyle W. Cayce
Clerk

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; TEXAS STATE CONFERENCE OF NAACP BRANCHES; AUSTIN BRANCH OF THE NAACP; HOME BUILDERS ASSOCIATION OF GREATER AUSTIN, INC.; NATIONAL ASSOCIATION OF HOME BUILDERS, INC.,

Plaintiffs-Appellants,

v.

CITY OF KYLE, TEXAS,

Defendant-Appellee.

Cons. w/ No. 09-50505

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; TEXAS STATE CONFERENCE OF NAACP BRANCHES; AUSTIN BRANCH OF THE NAACP; HOME BUILDERS ASSOCIATION OF GREATER AUSTIN, INC.; NATIONAL ASSOCIATION OF HOME BUILDERS, INC.,

Plaintiffs-Appellees,

v.

CITY OF KYLE, TEXAS,

Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Texas (Austin Division)

No. 09-50352 Cons. w/ No. 09-50505

Before JONES, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This appeal presents two standing issues: (1) whether the National Association for the Advancement of Colored People, the Texas State Conference of NAACP Branches, and the Austin Branch of the NAACP (collectively, "NAACP") has associational standing; and (2) whether the Home Builders Association of Greater Austin ("HBA") and the National Association of Home Builders (collectively, "Builders Associations") have organizational standing. Neither have standing. Accordingly, we AFFIRM the district court's denial of declaratory and injunctive relief under the Fair Housing Act ("FHA").[1] Furthermore, we find that Kyle is not entitled to attorneys' fees under 42 U.S.C. § 3613(c)(2) because Plaintiffs' claims are not frivolous.

I.

Because the court need not reach any issues beyond standing and the request for attorneys' fees, we have set forth only the facts pertinent to those issues.

In November 2003, Kyle changed its zoning and subdivision ordinances governing new single-family residences. The revised ordinances increased the minimum lot and home sizes for such residences. They also required full exterior masonry. In November 2005, the National Association for the Advancement of Colored People, the Texas State Conference of NAACP Branches, and the Austin Branch of the NAACP (collectively, "NAACP"), and the Builders Associations

---

[1] Because Plaintiffs lack standing, we do not reach their FHA claim or the Builders Associations' claim that the City retaliated against them for their opposition to the revised ordinances.

2

sued Kyle for violations of the FHA. Specifically, they alleged that the revised ordinances have caused the price of entry-level, single-family residences to increase. According to Plaintiffs, this disparately impacts African-Americans and Hispanics by making new homes unaffordable to more African-American and Hispanic households than to Caucasian households. To support this allegation, Plaintiffs relied on a study that the HBA commissioned, which concluded that the revised ordinances disproportionately excluded certain minority groups from buying single-family residences in the relevant areas. The HBA is a lobbying group that focuses on local, state, and national legislative and regulatory changes that affect the residential-construction industry.

Plaintiffs sought a declaration that the revised ordinances are invalid under the FHA as well as a permanent injunction preventing Kyle from enforcing the revised ordinances in a manner that discriminates against minorities. After a bench trial, the district court denied declaratory and injunctive relief, finding that the statistical evidence offered by Plaintiffs was insufficient to establish a *prima facie* case of disparate impact or other discriminatory effects under the FHA. *NAACP v. City of Kyle*, A-05-CA-979-LY, 2009 WL 6574497, at *4 (W.D. Tex. Mar. 20, 2009). In doing so, the court "presume[d] without deciding that Plaintiffs have standing to bring this action." *Id.* at *2 n.6. The court also denied Kyle's motion for attorneys' fees (as well as the motion for reconsideration of that denial) because the court found that the request was premature in light of this appeal.

II.

This court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*. *Villafranca v. United States*, 587 F.3d 257, 260

No. 09-50352 Cons. w/ No. 09-50505

(5th Cir. 2009). The court examines standing *de novo*. *United States v. $500,000.00 in U.S. Currency*, 591 F.3d 402, 404 (5th Cir. 2009).

A.

In their briefs, Plaintiffs assert two grounds for standing: the NAACP claimed associational standing and the Builders Associations claimed organizational standing. At oral argument, however, Plaintiffs appeared to abandon their associational-standing claim and argued that their case "rise[s] or fall[s]" depending on organizational standing. *See Jackson v. Watkins*, 619 F.3d 463, 466 n.1 (5th Cir. 2010).[2]

However, we need not rely on waiver here, as even assuming that the argument is not waived, Plaintiffs do not have standing under either an associational or organizational theory. Article III standing is a jurisdictional requirement. *See Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996); *Steel Co. v.*

---

[2] The April 5, 2010 Notice of Appearance shows that the attorney for the Builders Association also represented the NAACP at oral argument. During the argument, the court posed the following questions and the attorney for both the NAACP and the Builders Associations gave the following answers:

> Q: Let's talk about standing then precisely. You're either going to have associational standing or standing by virtue of the membership of the association, correct?
> A: We are actually contending that the HBA has organizational standing, Your Honor. We are claiming we had a diversion of resources . . . .
> Q: You rise or fall on organizational standing.
> A: Yes, sir, I agree with that.

Indeed, the *amici* for Kyle pointed out, "If I understand counsel's remarks today, they have essentially waived the NAACP argument [on associational standing]. . . . That means, as counsel conceded at argument, that standing in this case rises and falls on the direct-injury argument that the Builders Association has put forth [(organizational standing based on a diversion of resources)]." On rebuttal, the attorney for the NAACP and the Builders Association did not dispute this assertion. Instead, he focused almost entirely on organizational standing and retaliation.

4

*Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998). The Supreme Court recently reemphasized that, "[w]ithout jurisdiction the court cannot proceed *at all* in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the *only* function remaining to the court is that of announcing the fact and dismissing the cause." *Haywood v. Drown*, 129 S.Ct. 2108, 2126 (2009) (quoting *Steel Co.*, 523 U.S. at 94) (emphases added). Standing under the FHA extends to the full limits of Article III. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). To have standing, an association or organization must satisfy the well-known requirements of *Lujan*:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560–61 (internal citations and footnote omitted, alterations in original); *see La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 304 (5th Cir. 2000).

As to the NAACP's associational-standing claim, there is no evidence in the record showing that a specific member of the NAACP has been unable to purchase a residence in Kyle as a result of the revised ordinances that went into effect in 2003. There is also no evidence showing when and how the revised ordinances may deprive a NAACP member of the opportunity to acquire a new residence in Kyle. Instead, Plaintiffs have pointed only to evidence suggesting,

in the abstract, that some minority members may be less able to afford such residences due to the revised ordinances. This is insufficient for associational standing because the alleged injury is neither concrete nor imminent. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (requiring an injury in fact that is concrete and actual or imminent, not conjectural or hypothetical); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (requiring that, for associational standing, the members must independently meet the Article III standing requirements).

Turning to organizational standing, an organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and "perceptibly impaired" the organization's ability to provide its "activities—with the consequent drain on the organization's resources . . . ." *Havens*, 455 U.S. at 379. Such injury must be "concrete and demonstrable." *Id.*

In *Havens*, the Supreme Court held that the organization had standing because it had sufficiently alleged that the defendant's steering practices "have perceptibly impaired its ability to provide counseling and referral services for low-and moderate-income homeseekers . . . ." *Id.* The Court explained, "Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests . . . ." *Id.*

Not every diversion of resources to counteract the defendant's conduct, however, establishes an injury in fact. In *ACORN*, this court explained that "[t]he mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is

6

insufficient to impart standing upon the organization." 211 F.3d at 305; *see also Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health and Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994). Applying this standard, the court held that ACORN did not have organizational standing:

> We conclude that ACORN did not demonstrate at trial any impairment in facilitating open housing. At best ACORN proved the resources it expended defending Lewis . . . ; but it did not prove a drain on its resources. ACORN's executive director, Jeffrey Karlson, testified at length at the trial. However, Karlson neither mentioned any specific projects ACORN had to put on hold while working on Lewis' case nor did he describe in any detail how ACORN had to re-double efforts in the community to combat discrimination.

*Id.*

Plaintiffs acknowledge that, under *ACORN*, their litigation efforts cannot establish injury in fact. Thus, they point to the HBA's "prelitigation" responses to the revised ordinances (before and after they were passed), which include a $15,000 study on the impact of the revised ordinances and lobbying "to get the City to back down on the Revised Ordinances." With respect to the latter, Plaintiffs submitted exhibits at trial, primarily showing (1) that the HBA held a meeting on August 9, 2003 to discuss the ordinances; (2) that, in August and September of 2003, the HBA corresponded with Kyle and others—in six emails and one fax—about the ordinances; (3) that the HBA drafted a two-page speech to the members of the Kyle Zoning Commission; and (4) that the HBA obtained a copy of the minutes of the "Regular Meeting of the Planning and Zoning Commission," held on October 14, 2003. The HBA's vice president of public policy also testified that she had spent significant time on the revised ordinances, which she could have spent on other matters.

Plaintiffs have not explained how the activities described above, which basically boil down to examining and communicating about developments in local zoning and subdivision ordinances, differ from the HBA's routine lobbying activities. Furthermore, Plaintiffs have not identified any specific projects that the HBA had to put on hold or otherwise curtail in order to respond to the revised ordinances. *See ACORN*, 211 F.3d at 305. Instead, Plaintiffs have only conjectured that the resources that the HBA had devoted to the revised ordinances could have been spent on other unspecified HBA activities. *Cf. Ass'n for Retarded Citizens of Dallas*, 19 F.3d at 243 (an injury in fact may not be "conjectural"). In short, Plaintiffs have not demonstrated that the diversion of resources here concretely and "perceptibly impaired" the HBA's ability to carry out its purpose. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). At most, they have established "simply a setback to the organization's abstract social interests." *Id.*; *accord Florida State Conference of NAACP v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008) (upholding standing because, "[i]nstead of 'abstract social interests,' the plaintiffs have averred that their actual ability to conduct specific projects during a specific period of time will be frustrated by Subsection 6's enforcement."). Thus, there is no injury in fact, and consequently, we must dismiss this case for lack of standing.

B.

Kyle asks for attorneys' fees under 42 U.S.C. § 3613(c)(2), which states that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs." There is no evidence that Plaintiffs' claims were "frivolous, unreasonable, or groundless." *De Jesus Nazario v. Morris Rodriguez*,

No. 09-50352 Cons. w/ No. 09-50505

554 F.3d 196, 200 n.3 (1st Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983)). Therefore, we deny the motion for attorneys' fees.

AFFIRMED.